## SUTTER *v.* ROBINSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued December 9, 10, 1886. — Decided December 20, 1886.

A patentee is not at liberty to insist in the courts upon a construction of his patent which the Patent Office required him to expressly abandon and disavow as the condition of the issue of his patent.

*Shepard v. Carrigan*, 116 U. S. 593, affirmed.

The improvement in the apparatus for resweating tobacco which was patented to Abraham Robinson, June 10, 1879, by Letters Patent No. 216, 293, consisted in the substitution of a wooden vessel in place of a metallic one for holding the tobacco while being resweated.

Bill in equity for the infringement of letters-patent. The case is stated in the opinion of the court.

*Mr. Thomas A. Banning* for appellants. *Mr. Ephraim Banning* was with him on the brief.

*Mr. John W. Munday* for appellees. *Mr. Edmund Adcock* was with him on the brief.

Mr. Justice Matthews delivered the opinion of the court.

This is a bill in equity filed by Isaac Robinson and Abraham Robinson against the appellants to restrain an alleged infringement of letters-patent granted by the United States to Abraham Robinson on June 10, 1879, for an improved apparatus for resweating tobacco. The defences relied on are, that the patent is invalid for want of novelty, and a denial of the alleged infringement. The specifications and claims of the patent, with reference to accompanying drawings, [p. 533,] are as follows:

"Figure 1 is a top or plan view of an apparatus embodying my improvements, and Fig. 2 is a vertical central section of the steam-receiver and tobacco-holder.

"Like letters of reference indicate like parts.

"It is usual to soften the leaves of tobacco, as is well known, in order to prepare them for being manufactured into cigars and other manufactured goods, and to bring out a good and uniform color. This has been done heretofore in various ways, and, among others, by dampening the leaves and exposing them to heat while in that condition.

"The object of this invention is to provide improved means for exposing the leaves to the action of steam for the purposes above set forth; and to that end my invention consists of a tobacco-holding vessel made of wood sufficiently porous to permit the steam to percolate through it, in combination, sub-

stantially as hereinafter described, with a steam-generating apparatus and a steam-receiving chamber surrounding the vessel for containing the tobacco.

"I am aware that the general structural plan of the apparatus hereinafter described is old, and I do not, therefore, here intend to claim the same independently of a tobacco-receiving vessel made of wood sufficiently porous to permit the steam to percolate through it, as and for the purposes set forth, the said wooden vessel constituting, as I believe, an improvement upon the apparatus heretofore in use, for the reason that, in employing wood instead of metal in the construction of the said vessel, the tobacco is prevented from being tainted, and may be kept continually moist by the action of the steam instead of being merely heated and sweated by it, or steamed only by the generation of steam in the same vessel containing the tobacco, it being obvious that, if the tobacco-receiving vessel be made of metal, as heretofore in devices of this class, the steam in an outer surrounding vessel would merely heat the tobacco and sweat it without imparting new moisture to it. Neither do I here intend to claim the process, as such, of steaming tobacco.

"In the drawings A represents an ordinary boiler for generating steam. B is a tank or vessel for receiving the steam generated by the boiler A. C is a tight wooden vessel for receiving the tobacco to be treated. This vessel should be provided with a tight-fitting cover, a. I make the vessel C of wood, as an essential feature of my invention, in order that the steam may sweat or percolate through it from the tank B, and so that the tobacco will not be tainted by contact with metal. The vessel C is enough smaller than the tank B to be suspended in the latter and leave an annular space, b, between the two, as well as a space underneath the bottom of the vessel C, as shown. The space b should also be covered. In order to provide a cover for the space b, and also suspend the vessel C firmly in the tank B, I employ an annular rim or lid, c, having an upwardly-turned flange, c', fitted to the vessel C, and a downwardly-turned flange, c'', fitted to the tank B, screws or other fastenings passing through the flanges into the parts

to which they are fitted; but it is not essential that these
flanges should be continuous or extend entirely around the
vessels. Neither is it essential that the flanged portions of the
lid *c* should be continuous, or in the same piece with the re-

*Fig. 1.*

*Fig.1.*

*Fig.2.*

maining part of the said lid. It is, in fact, much the easier
way to make the flanged portions separately from the lid
proper, and I have represented them as made in that manner.

"I do not, however, here intend to be restricted to any par-
ticular way of applying the lid *c* and suspending the vessel C,

as both may be done in various suitable ways; but I deem the manner shown to be the best.

"D is a steam-pipe leading from the upper part of the boiler A into the upper part of the space $b$, and E is a water-pipe leading from the lower part of the said space into the lower part of the boiler. To use this apparatus for the purpose for which it is intended, the water in the boiler should be heated until steam is generated. The tobacco to be treated should be placed in the vessel C and covered, the tobacco being then in the condition in which it exists when taken from the cases or packages in which it may have been packed by the producers or shippers.

"The water, as well as the steam, will enter the space $b$ and produce a sufficient temperature in the vessel C to sweat the tobacco therein, the steam producing moisture in the vessel C by sweating or percolating through it from the space $b$ in addition to the moisture originally in the tobacco before it was confined in the vessel. The steam which enters the space $b$ through the pipe D, finding a lower temperature in the said space than in the boiler, becomes condensed, and is added or returned to the volume of water which flows from the said space into the boiler, and thus keeps the latter supplied. A circulation of water and steam is also kept up to a certain extent.

"In a building where steam is supplied through pipes, the steam may be conducted into the space $b$ from the boiler which supplies the steam, wherever the boiler may be situated. The tobacco should be exposed to this treatment from three to eight days, according to the result desired to be produced, and it will thus be rendered soft and pliable, and of a uniform and dark color, without being in any way injured. The tobacco prepared in this manner may be manufactured into various articles, like cigars and cigarettes.

"I deem it preferable to make the tank B, as well as the tank C, of wood, so as to prevent tainting the tobacco, and so as to render the apparatus capable of treating large quantities of tobacco at the same time, and without making the apparatus heavy and expensive, and to employ a boiler wholly de-

tached from the tank B, excepting by the steam and water, pipes connecting the same, thus enabling me to make the outer or larger tank of wood without exposing it to danger from fire. A detached boiler amply sufficient to be employed in connection with very large tanks will be comparatively simple and cheap.

" Having thus described my invention, what I claim as new, and desire to secure by letters-patent, is —

" 1. The apparatus, substantially as described, for treating tobacco, to wit: The tight vessel or tank B, the tight vessel C, made of wood and suspended in the tank B, and a steam-generator or heater, all combined and operating together, substantially as and for the purposes specified.

" 2. The combination of the boiler A, the tight tank B made of wood, the tight vessel C, made of wood and suspended in the tank B, and the pipes D and E entering the tank B and the boiler, all arranged and operating substantially as and for the purposes specified."

On the hearing in the Circuit Court it was found, upon the evidence, that the device used by the defendants differed from that of the complainants, as described in the patent, only in this respect, that the defendants' tobacco-holder is not made tight so as to exclude moisture except through the pores of the wood; the defendants using the ordinary tobacco cases in which the leaf tobacco comes packed, to hold the tobacco during the process of resweating. It was contended on the part of the defendants that this was a substantial difference, because the complainants' claim required their tobacco-holder to be tight while that of the defendants was not. In disposing of the case upon this point, the judge holding the Circuit Court, in his opinion, said: " The essential feature of complainants' invention consists in subjecting the mass of leaf tobacco to moisture and heat in a comparatively close wooden box for a sufficient time to have it undergo the process of resweating, and it is no answer to complainants' charge of infringement of their patent to say that defendants' box is, not quite so tight as that complainants deem desirable or necessary for the most satisfactory operation of their device.' *Robinson* v. *Sutter*, 10 Bissell, 100 ; *S. C.* 8 Fed Rep. 828.

The issue as to novelty, upon the proof, was also decided against the defendants, for the reason that the two devices relied upon — one described in the Oppelt patent of June 16, 1874, and the other in the Wenderoth patent of July 16, 1878 — both use metal tanks and a metal tobacco-holder. It was shown that contact with metal taints and injures the tobacco operated upon, and that the free admission of steam wets and to some extent cooks the tobacco; and the conclusion of the Circuit Court was, that "the porous wooden tobacco-holder devised by Robinson seems, from the proof, to stimulate that slow fermentation and action in the constituent elements of the leaf which is required to make the whole mass homo- geneous."

Upon a showing made by the defendants, a rehearing of the cause was granted, and further proofs taken. Upon that hearing it was made clearly to appear, from the testimony, that the artificial resweating of tobacco had been effected long prior to the application for the complainants' patent, by means of the application of steam in a chamber adapted for that purpose, applied to the tobacco while in the ordinary tobacco cases in which the leaf tobacco comes packed, just as the defendants were found to have practised. The case, however, was decided against the defendants upon another ground, as appears from the opinion of the judge holding the Circuit Court. *Robinson* v. *Sutter*, 11 Fed. Rep. 798. He said: "The distinctive feature of complainants' device for resweating tobacco is the water tank in the bottom of their outer chamber, so that, by keeping this water at the proper temperature, the atmosphere of the outer chamber can be kept warm and humid, whereby the process of resweating will be induced and carried on to whatever extent shall be deemed desirable." The devices used prior to Robinson's invention, and proven as anticipations, which would avoid his patent for want of novelty, were found not to meet that point in the description of the complainants' device, inasmuch as the outer tank in each, into which the steam entered for the purpose of heating and moistening the tobacco, had specific provision made in it for drawing off the water formed by condensation of the steam, instead

of being arranged so as to hold a body of water in order to equalize and maintain the temperature of the vapor in the room or tank.

The defendants had also introduced in evidence, as an anticipation, a patent granted in 1865 to one Huse. His invention is described in his specification as follows:

"I take the tobacco, by preference, after it has been desiccated and packed in the usual manner in hogsheads or cases, and which it is well known are not by any means so close as to exclude steam. I place these hogsheads or cases, or both, in a chamber of convenient size, and which can be closed up steam-tight, and I then introduce heat and moisture by means of steam apparatus, such as generally employed for heating buildings, the coils or congeries of pipe being arranged in any suitable manner for a proper distribution of the heat. Some of the pipes, about one half of them, are to be pierced with very small holes, to permit the escape of steam into the chamber. It will be found best to raise and maintain the temperature at about 150 degrees Fahrenheit, and for about forty-eight hours for tobacco which has been well desiccated, a longer time being required when treated before it has been well dried. At the end of the time specified, the tobacco should be examined, and, so soon as nicotine is well developed, which will be indicated by the evolution of ammonia, the steam must be shut off, the chamber opened, the hogsheads or cases opened, the tobacco all opened and shaken and thoroughly dried, which is best done in an open and well-ventilated room; and after it has been well dried the tobacco will be found to be thoroughly cured and ready for use, and further fermentation so completely stopped that it can be repacked and kept for any desired length of time.

"In this way I avoid all the evil consequences of the method heretofore practised, while at the same time it will enable the planter to put his crop of tobacco in market in a comparatively short space of time.

"What I claim as my invention, and desire to secure by letters-patent, is the process, substantially as herein described, of curing tobacco, which process consists in subjecting it to

the action of artificial heat and steam to induce the required fermentation until nicotine is evolved, and then stopping the further progress of fermentation by opening the packages and thoroughly drying every part, substantially as described."

In respect to this, the Circuit Court said : " As for the Huse patent of 1865, it was only a box heated with steam-coils, in which the tobacco was to be placed and heated by the radiation of heat from the pipes and the introduction of live steam." 11 Fed. Rep. 798.

There was, accordingly, a decree entered in favor of the complainants for an injunction, and for the recovery of $3309.30 damages found by the master. The defendants have brought the present appeal.

It sufficiently appears from the evidence, that, if the essential and sole characteristic of the complainants' invention consists in a substitution of a close wooden box, to hold the tobacco while being subjected to the process of resweating, for metal tobacco-holders previously in use, either the practice of the defendants in using as a tobacco-holder the ordinary tobacco cases in which the leaf tobacco comes packed, during the process of resweating, is not an infringement, or, if it be so held, the complainants' invention was anticipated by others long prior to its date. This is shown by the Huse patent, and it is proven to have been employed by others, particularly by Louis Specht in the tobacco factory of August Beck & Co., in Chicago.

It only becomes important, therefore, to consider the ground finally taken in support of the decree, which involves the question whether the appellees are entitled to claim the water tank in the bottom of the outer chamber, and the use of water in it, whereby the atmosphere of the outer chamber can be kept warm and humid, so that the process of resweating may be induced and carried on to any desirable extent. In this connection it becomes important to consider the proceedings in the Patent Office in the granting of the patent, as shown by the file-wrapper. It appears from the transcript of the record in the case that the defendants offered in evidence a copy of this file-wrapper and contents, which was objected to as incom-

petent and not sufficiently verified. No ruling of the Circuit Court seems to have been made upon the objection, and the paper, although described as marked, " Defendants' exhibit, copy of the file-wrapper and contents of the Robinson patent," is not certified as a part of the evidence, and is not contained in the transcript. It does not, therefore, appear that the paper was ever before the court below, or considered by it in the hearing of the case. In this court, however, on the hearing, by consent of parties, the file-wrapper and contents were ordered to be made a part of the record. From that paper it appears that the original specification, on which the application for a patent was based, declared that the petitioner had invented certain new and useful improvements in the method as well as apparatus for steaming leaf tobacco. In setting out the object of the invention, he said : " The object of this invention is to provide suitable means whereby the leaves may be subjected to the process of sweating by means of steam or water under the influence of heat, and to that end my invention consists of that process and in the apparatus by means of which I carry on the said process, substantially as hereinafter specified."

It was also stated, that " B is a tank or vessel for containing water and receiving the steam generated by the boiler A;" and that " steam may also be generated in the space by filling the latter partly with water, and by applying heat directly to the bottom of the tank B. A good result will be accomplished by keeping the water hot, though not to a degree sufficient to generate steam to any appreciable extent." The claims were set out as follows :

" First. The method or art, substantially as described, of treating tobacco, to wit, by placing the leaves in a tight vessel surrounded or partly surrounded by a chamber for containing water, and subjecting the tobacco to heat by heating the water in the said chamber, and keeping it to the proper temperature by means of heat applied to the said chamber continuously during the operation of sweating the leaves, substantially as and for the purpose specified.

" Second. The method or art, substantially as specified, of

treating tobacco, to wit, by placing the leaves in a tight vessel surrounded by a steam and water-tight chamber, and by introducing steam into the said chamber, substantially as and for the purpose specified.

"Third. The apparatus, substantially as described, for treating tobacco, to wit, the tight vessel or tank B, the tight vessel C, made of wood and suspended in the tank B, and a steam generator or heater, all combined and operating together, substantially as and for the purpose specified.

"Fourth. The combination of the boiler A, the tight tank B, made of wood, the tight vessel C, made of wood and suspended in the tank B, and the pipes D and E entering the tank B and the boiler, all arranged and operating substantially as and for the purpose specified."

This application was filed on the 28th of February, 1879, and rejected by the Patent Office on the 6th of March, 1879.

Thereupon the applicant filed certain amendments to his specification, by striking out everything that related to the method or process for steaming leaf tobacco, and all that had reference to the use of water under the influence of heat, as contained in the tank B, and the first two claims. Amendments were also made by inserting other parts of the specification as it now stands; amongst others, the following: "I make the vessel C of wood, as an essential feature of my invention, in order that the steam may sweat or percolate through it from the tank B, and so that the tobacco will not be tainted by contact with the metal." And also the following: "The steam producing moisture in the vessel C, by sweating or percolating through it from the space b, in addition to the moisture originally in the tobacco before it was confined in the vessel."

On the 10th of April, 1879, the examiner informed the applicant that he "should specifically set forth that the structural plan of the device is old, and that the improvement consists alone in making the vessel C of wood instead of metal, and sufficiently porous to permit the steam to percolate through it."

Thereupon the applicant filed an amendment by inserting

the following: " I am aware that the general structural plan of the apparatus hereinbefore described is old, excepting that the vessel C for receiving the tobacco has not, so far as I am aware, heretofore been made of wood, but of metal. The making of the vessel C of wood, and sufficiently porous to permit the steam to percolate through it, constitutes the essential feature of this invention. When metallic vessels are employed to receive the tobacco, it is liable to be tainted, and in such cases is merely heated, but not subjected to the moistening influence of steam or vapor percolating through the vessel containing the tobacco, as when this vessel is made of wood sufficiently porous to admit of that result. I do not, therefore, here intend to claim the general structural plan of the said apparatus independently of a vessel, C, made of wood, sufficiently porous to allow the steam to percolate through it."

On the 24th of April, 1879, the examiner wrote to the applicant as follows: " The specification should be amended by omitting all statements that the applicant has an improved process or is the inventor of such. . . . The statement of invention, and reference to the state of the art, both require correction, as the invention is an improved apparatus only."

Thereupon further amendments were made, resulting in the specification and claims as they now stand, and the patent was granted.

A comparison of the patent as granted with the application very conclusively establishes the limits within which the patentee's claims must be confined. He is not at liberty now to insist upon a construction of his patent which will include what he was expressly required to abandon and disavow as a condition of the grant. *Shepard* v. *Carrigan*, 116 U. S. 593, and cases there cited. It appears, therefore, distinctly that the patentee has no claim for a process of steaming tobacco by means of steam, or steam and a body of hot water, nor by any process whatever. His invention must be limited to the apparatus, and as to that he was expressly required to state that its structural plan was old and not of his invention. What is meant by the structural plan of the apparatus is the arrangement of the vessels for holding the tobacco, for con-

fining the steam and water, and for supplying the steam; and the precise improvement which is alone the subject of the patent is the substitution of a wooden vessel for holding the tobacco while being resweated in place of a metallic one. So that the ultimate question in the case is reduced to this, whether, in such an apparatus, the use of the cases, or boxes, or packages, in which the tobacco leaves are originally packed by the producer is equivalent to the wooden tobacco-holder mentioned in the complainants' specification. If it is not, there is no infringement; if it is, as we have already seen, it had been anticipated for many years by the practice of other persons. It is expressly described in the Huse patent of 1865, where the inventor states, as follows: "I take the tobacco, by preference, after it has been desiccated and packed in the usual manner in hogsheads or cases, and which it is well known are not by any means so close as to exclude steam. I place these hogsheads or cases, or both, in a chamber of convenient size, and which can be closed up steam-tight, and I then introduce heat and moisture by means of steam apparatus, such as generally employed for heating buildings, the coils or congeries of pipe being arranged in any suitable manner for a proper distribution of the heat. Some of the pipes, about one half of them, are to be pierced with very small holes to permit the escape of steam into the chamber." And the same thing was done at the establishment of August Beck & Co., in Chicago, before the date of Robinson's application, and by several others.

For these reasons we are of opinion that the decree below was erroneous.

*It is, therefore, reversed, and the cause remanded, with instructions to dismiss the bill.*