## BLAW–KNOX CO. v. ERIE STEEL CONST. CO.

### No. 2257.

District Court, W. D. Pennsylvania.

June 6, 1930.

Walter J. Blenko, Byrnes, Stebbins, Parmelee & Blenko, and George E. Stebbins, all of Pittsburgh, Pa., for Blaw-Knox Co.

Hugh C. Lord, of Erie, Pa., for Erie Steel Const. Co.

SCHOONMAKER, District Judge.

This is a patent infringment suit, involving patent No. 1,571,544, issued February 2, 1926, to Blaw-Knox Company as assignee of Albert F. Garlinghouse and William M. Venable.

The jurisdictional averments of the bill, the ownership by the plaintiff of the patent in suit, and notice to defendant of alleged infringement prior to filing the bill, are all admitted.

The patent contains eight claims, all of which are in suit, but claims 5 and 8 were selected by the plaintiff at the trial, as example claims. They are as follows:

"5. A device of the character described for batching bulk materials comprising, in combination, a downward discharging outlet for such material; a substantially horizontal gate movable beneath said outlet at an interval below its edge, displacing material from the outlet laterally and downward past said edge and its own front edge in closing, and when closed extending beyond the outlet edge to the natural slope line of material there-

from, so as to prevent further outflow; and a measuring receptacle receiving around the front edge of the gate the material displaced as aforesaid, in addition to the previous discharge from the outlet while the gate was open, and delivering the whole when itself opened for discharge.

"8. A device for handling bulk materials comprising in combination, a supply receptacle, a measuring receptacle therebelow, a trough shaped gate between said receptacles movable through the material in the direction of the trough, and rollers for the gate at the upper outer edges of the trough protected from contact with the material by the sides of said trough."

The patent in suit relates to a device for measuring bulk materials.

The specifications of the patent describe the invention as follows, page 1, lines 13 to 49, inclusive:

"Our invention relates to the handling of bulk materials, such, for example, as sand, gravel, and broken stone used in concrete construction, and is especially concerned with a novel gate, for controlling the outflow of the material, that is particularly useful in connection with measuring devices of the type most convenient for such materials. This type of measuring device or 'batcher,' as we term it, generally comprises a supply or storage bin for the bulk material, with a discharge outlet at its bottom; a measuring hopper or receptacle receiving the material from such outlet, and provided with a discharge door of its own at its bottom; and our novel gate for controlling the flow from the bin to the measuring hopper. In this relation, our type of gate presents the advantage that it permits of liberal clearances above and below the moving gate-proper, between gate and discharge outlet above, and between gate and measuring hopper below; that it can be operated with remarkable ease of movement,— even in closing (as it must) through a mass or column of material extending unbroken from the measuring hopper up into the bin,—and hence very rapidly; that it allows the natural slope of the material discharged from the outlet to determine the upper limit of the batch, and admits of great accuracy of measurement without necessity for a 'strike-off' to determine this limit.

"Our invention also presents various other novel features that are advantageous in apparatus of this character, even aside from our type of gate."

This type of device for measuring bulk materials came into use in the course of the development of concrete construction of all sorts; it being necessary accurately to measure the materials entering into the concrete mixer so as to get the proper proportion of each in order to secure a durable concrete structure in walls and highway work. The enormous mileage of concrete road construction in the last ten years has made necessary the use of large numbers of measuring devices for measuring the component parts intended for the concrete structure. The plaintiff entered the field in the month of August, 1921, when its engineer, Venable, and its salesman, Garlinghouse, collaborated on a design for a device for measuring bulk materials which resulted in the patent in suit. At that time there were in common use devices for the measuring of these road materials which provided for the flow of the material to be measured into a measuring receptacle through an outlet; the supply from the bin to the measuring receptacle being intercepted when the receptacle became filled by shoving a gate across the discharge outlet.

This method had its difficulties. The gate at the discharge outlet of the supply bin was so located as to require its being forced through the material from one side of the discharge chute to the other, and there was always more or less jamming of material between the end of the gate and the side walls of the chute which would prevent a perfect closure. Then it was always necessary to fill the receptacle heaping full, and, in order to get an accurate measurement, "strike-off," or "scrape-off," the surplus material which would be heaped above the level of the side walls of the receptacle.

To meet the situation, the patentees proposed to locate the shut-off gate at a substantial distance below the bottom of the discharge outlet of the supply bin, so that the gate would not meet the wall of the discharge chute at all, but would pass that wall a distance sufficient to let the material passing through the chute assume its normal angle of repose, when the discharge from the supply bin would cease. It was found that substantially the same amount of material was displaced forwardly ahead of the gate during each closing movement and dropped into the receptacle, so that, when the measuring receptacle was filled to capacity and the shut-off gate operated, you would get substantially the same quantity therein at each closure of the gate. This location of the gate, the pat-

entees found, eased the movement of the gate by reason of the fact that the material resting on it as the gate passed through was carried forward when the gate moved to its closed position.

That the device was useful and found a place in the road-building program of the country is evidenced by the fact that the plaintiff has built and sold six thousand eight hundred and thirty-eight measuring devices, employing the gate of the patent, and its total business based on the invention totals over $5,000,000.

The defendant contends that claims 1 to 7, inclusive, are void for want of definiteness as to the interval between the bottom of the chute and the shut-off gate. We cannot so construe the patent. In our opinion, the specifications sufficiently explain the ratio between size of the interval and the dimensions of the particles of the material being held. See lines 106 to 123 of page 2 of the specifications which make the following statement as to this interval:

"The distance or interval between the bottom of the gate and the bottom edge of the ring or collar 9 should be ample to permit free movement without any tendency to clogging or binding. For broken stone used in any concrete construction the distance should be approximately 5 or 6 inches but for sand it may be as little as 1 or 2 inches. We find in practice, however, that it is best to make this distance suitable for the coarsest material to be handled for we have found by experience that it is not necessary to lessen it for other materials. By introducing such figures we do not wish to limit ourselves to any particular distance as the proper distance for any particular material must be determined by experiment if it does not come within the limits mentioned."

The defendant contends also that the patent is invalid because all of the elements of the patent devices are found in the prior art essentially in the same combination as disclosed by the patent.

Although not citing it in its answer as anticipatory of the patent in suit, the defendant has offered as its Exhibit F an article in the Engineering News of August 6, 1914, describing a concrete mixing plant for the Elephant Butte dam as illustrative of the state of the art at the time Garlinghouse and Venable started their development. As a part of that plant, there was a device for measuring the rock and sand that went into the mixer. The rock and sand from the supply bin emp-

tied through a chute into a measuring bin, and was shut off by a gate when the measuring bin was filled. The problem of wedging of rock in the gate was cared for "by clearance below the chute." (Page 295, Ex. F.) There is no statement of the amount of clearance, nor do the drawings in the article indicate it. We therefore conclude that this disclosure is not sufficient to void the whole patent, though it does disclose one of the elements of it.

As we consider the patents cited as anticipatory of the patent in suit, we find none that relate to the measuring of such materials' as are cited in the patent as examples of the materials which may be measured by the device disclosed; i. e., sand, gravel, and broken stone used in concrete construction. The Smyser patent, No. 570,109, has to do with the filling of small boxes of condiments, such as salt and sugar. It was issued in 1896. We have been using concrete since about 1900, and yet for all these years no one thought of adapting the Smyser device to measuring materials for use in concrete construction.

The United States patent to Defauconpret, No. 1,417,040, "relates to a delivering or bagging apparatus by means of which grain, coffee, dried vegetables, pulverulent or any granular or fragmentary material." The application of the Defauconpret patent was copending in the Patent Office with the application for the patent in suit, but no interference was disclosed. Under these circumstances, we certainly have a right to presume that, in the judgment of the expert Examiner of the Patent Office, there was no occasion for interference. Beckwith v. Malleable Iron Range Co. (C. C.) 174 F. 1001, 1012. Defauconpret forfeited his original application and renewed it under Rev. St. § 4897, as amended (35 USCA § 38). The plaintiff alleges that there was an abandonment, but we hold that the Defauconfret patent lies in a nonanalogous art, and therefore do not pass on that question; it being unnecessary to this suit.

The Defauconpret French patent relates to a bag filler for grain. We hold this to be in a nonanalogous art. We cannot see how any one would look into the art of bagging grain in order to find out how to construct a device for measuring materials on their way to a concrete mixer.

There is a dispute over the effective date of this patent. Was it the date it was allowed, June 2, 1921, or September 20, 1921, the date it was published? In the view we take

of the patent, that is not important, but, in any event, the Supreme Court has said that a foreign patent may not be cited as anticipatory unless published anterior to the making of the invention secured by the American patent. Elizabeth .v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000.

The Warner patent, No. 1,137,558, relates to a device for preventing dust, and is directed to a hood arrangement so that coal dust will not fly about when the contents of the coal bin are dumped into a hopper car. It shows as an incident to its construction a clamshell gate which resembles a clamshell gate shown in figure 11 of the Garlinghouse and Venable patent. No reference to the clearance between the gate and the bin are given. There is no disclosure of sidewise displacement of material. It does not disclose the combination of the patent at all.

The German patent cited by the defendant is not available as a reference in this case, as there was no evidence to show when it was published.

The Palmer patent 1,483,643 was cited by the Examiner during the prosecution of the Garlinghouse and Venable application. This patent is too late as a reference. The Palmer application was filed December 5, 1921, and Garlinghouse and Venable made their invention in August, 1921. It is not necessary, therefore, to discuss it further.

The French patent, No. 475,885, shows a device to limit and uniformly distribute the load of coal and bulk material. There is a gate to shut off the supply of coal moving into the car, but there is no disclosure about any clearance above the gate. The gate is mounted on wheels. It has not the trough shape nor the rollers of the gate disclosed by the patent in suit.

The Oberste & Wofford patent, No. 1,-329,472, was cited in the Patent Office during the prosecution of the Garlinghouse and Venable patent; and the claims of that patent were, we believe, properly allowed over it. The Oberste & Wofford patent shows a grocery store device with small slides operated by hand. It is in a nonanalogous art, and teaches nothing as to measuring stone and sand.

The Waechter & Hetzel patent, No. 670,-747, discloses a discharge device for hoppers or chutes that will intermittently discharge a certain quantity of material into moving buckets. There is a flowing stream of material. The gate does not move through an inert body of material displacing a definite amount of material into a measuring receptacle, as in the patent in suit.

The Schwalb patent, No. 1,427,860, discloses a feeding device for feeding into traveling buckets material from a loaded railroad car. There is no measuring receptacle whatever disclosed in this patent.

■ From the evidence, we conclude that there is no analogous art that anticipates the patent in suit, and that claims of the patent, numbered 1 to 7, inclusive, are valid and infringed.

■ We turn now to claim 8 of the patent covering the trough-shape gate and rollers for the gate at the upper edges of the trough protected from contact with the material by the sides of the trough. In the original application as filed, two claims were directed to the trough-shape gate, 18 and 19. Claim 18, the one covering the trough-shape gate, was rejected by the Patent Office, and the rejection was acquiesced in. The plaintiff is not now at liberty to claim any novelty in the trough shape of the gate. Sutter v. Robinson, 119 U. S. 531, 7 S. Ct. 376, 30 L. Ed. 492.

Claim 19 of the original application was as follows:

"19. A device for handling bulk materials comprising in combination, a supply receptacle, a measuring receptacle therebelow, a trough shaped gate between said receptacles movable through the material in the direction of the trough, and rollers for the gate at the upper outer edges of the trough outside the slope lines of the material."

This claim was amended by erasing from the end of the claim the words, "outside the slope lines of the material," and inserting in lieu thereof the words, "protected from contact with the material by the sides of said trough." As so amended, claim 19 became claim 8 of the patent in suit.

The defendant contends that it does not have rollers for the gate at the upper outer edges of the trough, and that the rollers which it does have are not protected by the sides of the trough, as the rollers of their gate are mounted in a U-shaped bracket, and run on journals extending from one wall to the other wall of this bracket, and do not operate at all in the open part of the chute.

■ We hold with the defendant as to this claim. The specific gate construction of the defendant's structure is different from that of the gate construction disclosed by the patent, and, as this claim 8 recited the gate construc-

tion in minute detail, we must hold that, the defendant's structure not meeting that description, it does not infringe.

Let a decree be submitted, holding claims 1 to 7 of the patent valid and infringed.