**BEAZLEY POWER MOWER CO., Inc., et al. v. PEARCE et al.**

**No. 45.**

District Court, E. D. Wisconsin.

May 1, 1941.

Guy Conrad, Lecher, Michael, Whyte & Spohn, and William Buckley, all of Milwaukee, Wis., for plaintiffs.

A. L. Morsell, Jr., of Milwaukee, Wis., for defendants.

DUFFY, District Judge.

This is a patent suit charging infringement of Claims 2 and 4 of Reissue Letters Patent No. 18,944, issued September 12, 1933.

The plaintiff Beazley Power Mower Company is the owner of the patent. The plaintiff Whirlwind Lawn Mowers Sales Corporation, now known as Whirlwind Lawn Mower Corporation, is the exclusive licensee.

The defense is invalidity and non-infringement. Under the first heading the defendants challenge the legality of the act of the Commissioner of Patents in reissuing the patent in question. They also contend that the claims in this suit are invalid and void as anticipated by several prior patents.

The patent in suit relates to a power operated lawn mower, which differs from the usual cutting reel type in that in lieu of a reel which rotates on a horizontal axis, it employs horizontally rotating knives mounted on a vertical axis.

The patentee has combined a blade type cutter rotatable in a horizontal path, a fan surface or air deflecting surface, a housing having certain special characteristics, with a wheeled or mobile frame, and with a motor, so that the whole may be moved over the grass to be cut, and the fan surface and the cutter rapidly rotated from the motor.

The distinguishing features claimed are (1) the horizontally disposed rotatable blade type cutter; (2) the housing having the characteristic of a confined air space open at the bottom adjacent to the ground; and

(3) the fan or air deflecting surface which must be rotatable with the cutter and so operatively or functionally interrelated with the cutter and the housing that axial air currents are produced upwardly past both the path of movement and the field of action of the cutters.

Patentee contends that the air flow, to be effective, must be upwardly through the zone which constitutes the field of action of the cutter; that by reason of this action the grass is lifted upwardly from the ground and held erect in the field of the cutters so as to be cut by the cutting edges thereof.

Patentee points out that the housing has a special function: That it is not only an enclosure and a guard, but also serves as a cowl or shroud for the air deflecting surfaces to build up a counter pressure or a back pressure to the centrifugal action of the rapidly rotating fan and cutter; that the tendency of the air, by reason of centrifugal force, to flow radially outward in a direction parallel to the upper and lower surfaces of the rotating cutter or fan, is overcome; that the air deflecting surfaces rotating with the cutter are hence enabled to exert their upward or axial lift in such a manner as to draw the grass or other material to be cut into an upright position in the field of action of the cutter. The patentee contends that this is the gist of the novel mode of operation of the patented combination.

Considering first the legality of the reissue patent, defendants contend that there was no inadvertence, accident, or mistake in the original Letters Patent; and that, therefore, the Commissioner acted beyond his authority in granting the reissue. Careful consideration reveals that patentee's solicitor was mistaken about the state of the prior art, and also with reference to the true nature and character of the invention. In the prosecution of the original patent no claims were presented which pointed out that the invention resided in combining a rotatable blade type cutter in a certain manner with a housing defining a confined air space open at its bottom adjacent to the ground, and also providing a fan or air deflecting surface, and so functionally interrelating such a surface with the cutter and with the housing as to provide a structural organization which had the new mode of operation characterizing the combination, that is, a mode of operation wherein air is advanced upwardly from the ground in the region of the cutter and past the path of movement of the cutter so as to draw grass upwardly within the field of action of the cutter.

The situation here is similar to that described in the case of Topliff v. Topliff, 145 U.S. 156, page 171, 12 S.Ct. 825, 831, 36 L.Ed. 658, where the court said: "* * * Under such circumstances, it would be manifestly unjust to deny him the benefit of a reissue to secure to him his actual invention, provided it is evident that there has been a mistake and he has been guilty of no want of reasonable diligence in discovering it, and no third persons have in the mean time acquired the right to manufacture or sell what he had failed to claim. * * *"

The application for the reissue was filed within approximately eight months after the issuance of the original patent. It is our opinion that the reissue was properly granted.

Upon the question of anticipation, the defendants cite numerous patents, but seem to rely particularly upon Sera Patent No. 1,622,611, Frey Patent No. 1,899,564, Muzzy Patent No. 1,332,657, and Durkee Patent No. 1,656,105.

Sera Patent seeks to utilize safety razor blades for the purpose of cutting lawns. It may well be doubted whether such a machine could possibly be of any practical operation. However, there is nothing in the specifications of that patent which teaches the production of air currents which are capable of raising the grass into the field of action of the cutters. One of the drawings does disclose that the razor blades would be tilted. It is apparent that if there were any upward air currents it would be entirely accidental and incidental, and not anticipated by the inventor. There is testimony in this case that any incidental upward air current which might be created by the tilted razor blades would be offset by the air currents from the centrifugal force which would be generated. The Sera Patent does not have a device which functions in the manner which the patented combination does, and it cannot produce the results which the patented combination produces.

The application for the Frey Patent was pending in the Patent Office at the same time as the application for the reissue patent in suit. From the classification given, it is apparent that the two applications were before the same examiner.

No interference was declared, and it follows that the Patent Office must have been of the opinion that there was no common patentable subject matter involved in these applications. Blaw-Knox Co. v. Erie Steel Construction Co., D.C., 47 F.2d 895. In addition, Frey does not have a housing so constructed as to be capable of functioning as a shroud or cowl to build up the necessary back pressure; in fact, Frey's housing would seem to be constructed for the purpose of relieving back pressure. This is evident by the enlarging discharge duct. Furthermore, Frey does not have his fan surface and cutters and housing so combined or interrelated that an upward flow of air is produced through the field of action of the cutters.

In the Muzzy Patent the housing has a rearwardly disposed spout through which the grass is mechanically pitched. This type of housing differs from the patent in suit as there would not be a confined space which would function as hereinbefore described. Muzzy makes no claim in his specifications nor in his claims that air currents are produced that flow upward through the field of action of his cutter. Another difference is that Muzzy uses a disk type of cutter rather than the blade type of the patent in suit.

The Durkee Patent does call for an axial upward flow of air in the field of action of his cutters. In the drawing Durkee shows that he has five separate cutting units, requiring five vertical shafts. Durkee has an entirely different approach, however, to the problem from the patented combination. The multiplicity of units which he requires with their very apparent disadvantages indicates that it is not an anticipation of the combination of the patent in suit.

The other patents cited by defendants have been considered, but are not regarded as anticipating the combination of the patent in suit. In no instance in the prior art is a housing so constructed and so specially combined with the other elements as to function as a cowl, to build up a counter pressure or back pressure to the centrifugal effect of the rapidly rotating fan surface and cutter and thereby allow the fan surface to produce air currents directed to the field of action of the cutters.

In considering the question of infringement, a close scrutiny must be had of the alleged infringing device. The defendant L. H. Pearce was formerly associated with the plaintiffs, and was in charge of production during the development and manufacture of the plaintiffs' mower. After a disagreement in 1937, the defendant withdrew and formed his own corporation, which is the co-defendant herein. He immediately started to manufacture a mower which he apparently designed so as to be as close as possible to the mower manufactured and sold by the plaintiffs. The question is whether he has avoided an infringement.

Pearce's mower (Plaintiffs' Exhibit 2) utilizes cutter arms (Plaintiffs' Exhibits 2a and 2b), which have upwardly facing bevels or milling. It is common practice to construct cutting instrumentalities by beveling on the top side only. The front of the housing of defendants' mower extends forwardly at an angle which is nearer to being parallel to the ground than it is to being vertical and confining as shown by Wall 15 of the Beazley Patent. Furthermore, the forwardmost edge of the extending front wall of the housing in the Pearce mower terminates at a point higher from the ground than the lower edges of the side walls, so that a part of the front of the Pearce housing is open. The defendants' mower does not have any fan or air advancing means except the bevel or the milled edge of the cutter arm. The lower cutter arm (Exhibit 2a) is the one customarily used and an examination of the defendants' mower in evidence discloses that this cutter arm is not within the housing, but rather below it. The plaintiffs are placed in a somewhat embarrassing position because, in order to establish their patent over the prior art, it was necessary to stress the importance of the fan or air advancing means as an essential feature of the invention.

In the oath to the reissue application Beazley stated: " * * * the prior art failed to teach the provision of a power mower characterized by the organization with a wheeled frame of a housing thereon defining a confined air space open at the bottom adjacent the ground with a power driven cutter supported for rotation in a horizontal path adjacent said bottom opening and *with a fan* so especially combined with the housing and cutter that its air deflecting surfaces advance air upwardly from the ground * * *."

The file wrapper discloses that when the examiner brought forth the Sera Patent, Beazley argued if there were any upward

air currents by reason of the tilted razor blades, it was only accidental. It would appear that at that time Beazley was relying on the use of a particular type of fan or air advancing means in addition to a cutter. Beazley cannot very well stress the importance of the fan in order to obtain the allowance of his claims, and then say that the fan is unimportant when trying to hold one as an infringer.

The plaintiffs are perhaps correct in their contention that the particular form of the fan surface is not an essential of the invention of the claims of the patent in suit, but considering the various differences that have been heretofore pointed out, it is our opinion that the defendant Pearce has succeeded in avoiding an infringement.